No. 68,840

IN THE MATTER OF WESLEY M. NORWOOD, *Respondent.*

(847 P.2d 1314)

Opinion filed March 5, 1993.

*Bruce E. Miller*, disciplinary administrator, argued the cause for the petitioner.

*Wesley M. Norwood*, pro se, and *Bruce J. Woner*, of Woner, Glenn, Reeder, Lowry & Girard, of Topeka, argued the cause for the respondent.

*Per Curiam:* This is an original proceeding in discipline filed by the Office of the Disciplinary Administrator against Wesley M. Norwood, of Lawrence, an attorney admitted to the practice of law in Kansas.

A formal disciplinary complaint was filed against Wesley M. Norwood on July 23, 1991, in connection with his financial dealings with two of his clients. A formal hearing was held before a hearing panel of the Kansas Board for Discipline of Attorneys. The following findings of fact and conclusions of law are supported by substantial competent evidence and we unanimously adopt them.

"FINDINGS OF FACT

"1. Respondent, Wesley M. Norwood, was admitted to the practice of law in Kansas on February 16, 1955, and is currently a registered Kansas Attorney . . . .

"COUNT I (B4971)

"2. On or about June 24, 1982, one Richard Vance Swaggerty was arrested and charged with Second Degree Murder in Case No. CR 82-644 as filed in Douglas County District Court. . . .

"3. Sometime prior to the events stated in paragraph 2, Anna Faye Swaggerty, a Texas resident and mother of Richard Vance Swaggerty, retained the services of Respondent, Wesley M. Norwood, to defend her son in the Douglas County criminal case.

"4. A fiduciary relationship was first established between Respondent, Wesley M. Norwood, and Anna Faye Swaggerty when she retained him to defend her son. A fiduciary relationship was also created between Respondent, Wesley M. Norwood, and Richard Vance Swaggerty when his defense was undertaken by Respondent, Wesley M. Norwood. Both of these fiduciary relationships continued generally throughout any time period relevant hereto

and at least through September 25, 1989, at which time Richard Vance Swaggerty [was] granted probation. [See generally Hazard and Hodes, The Law of Lawyering, 2nd Edition S 1.5:103 (1990)].

"5. Respondent, Wesley M. Norwood, borrowed: $30,000.00 from Anna Faye Swaggerty on May 20, 1987; $5,000.00 from Anna Faye Swaggerty on November 5, 1987; $5,000.00 from Anna Faye Swaggerty on January 27, 1988; $65,000.00 from Anna Faye Swaggerty on June 7, 1988; and $12,000.00 on January 26, 1989, for a total of $117,000.00 (Note: because of the times involved the Code of Professional Responsibility, [1992] Kan. Ct. R. Annot. [189] applies to the first three transactions while the Model Rules of Professional Conduct, Rule 226, [1992] Kan. Ct. R. Annot. [238] applies to the last two transactions.)

"6. Respondent, Wesley M. Norwood, gave no collateral or security to Anna Faye Swaggerty for any of the five (5) loans described in paragraph 5.

"7. Respondent, Wesley M. Norwood, gave no Promissory note or any other evidence of obligation to Anna Faye Swaggerty in any of the five (5) loan transactions described in paragraph 5.

"8. Respondent, Wesley M. Norwood, agreed to give no interest to Anna Faye Swaggerty in any of the five (5) [loan] transactions described in paragraph five (5) when the normal commercial loan note in Lawrence, Kansas as Respondent, Wesley M. Norwood, well knew, was between 12% and 14% in 1987 to 1989.

"9. Respondent, Wesley M. Norwood, never agreed to a due date on any of the five (5) loans he obtained from Anna Faye Swaggerty as described in paragraph 5.

"10. Respondent, Wesley M. Norwood's five (5) loan transactions were not on fair and reasonable terms for Anna Faye Swaggerty.

"11. Respondent, Wesley M. Norwood, never reduced any of the five (5) loan transactions described in paragraph 5 to a written form for the benefit of Anna Faye Swaggerty.

"12. Respondent, Wesley M. Norwood, never suggested or required Anna Faye Swaggerty to seek legal advice of independent counsel to the five (5) loan transactions described in paragraph 5.

"13. Respondent, Wesley M. Norwood, did not repay Anna Faye Swaggerty the money in a timely manner nor when requested to do so in December 1989. Since 1989, Respondent, Wesley M. Norwood, has repaid approximately $30,000.00 of the $117,000.00 in loans outlined in paragraph 5. In addition, Respondent, Wesley M. Norwood, has agreed to allow an outstanding attorney fee bill in the amount of $3,250.00 incurred in representing Richard Vance Swaggerty and owed by Anna Faye Swaggerty to be credited toward the debt owed by Respondent, Wesley M. Norwood to Anna Faye Swaggerty. No payments have been made by Respondent, Wesley M. Norwood, since December 1990.

"14. These acts of Respondent, Wesley M. Norwood, may amount to a violation of DR 5-104(a) [1992 Kan. Ct. R. Annot. 210], DR 7-101(A)(3)

[1992 Kan. Ct. R. Annot. 219], DR 1-102(A)(1) and (6) [1992 Kan. Ct. R. Annot. 189] or MRPC 1.7 [1992 Kan. Ct. R. Annot. 261]; 1.8(a) [1992 Kan. Ct. R. Annot. 265], 1.15(d)(2)(iii) and (iv) [1992 Kan. Ct. R. Annot. 281], and 8.4(a) and (g) [1992 Kan. Ct. R. Annot. 328], and Respondent, Wesley M. Norwood's oath of office, *In re Wilkinson*, 242 Kan. 133 (1987), and other ethical provisions as determined by the hearing panel.

"COUNT II (B4994)

"15. On or about June 30, 1989, one Wayne F. McKinney was charged in Douglas County District Court Case No. 89 CR-490 with two felonies one count of Possession of Marijuana With Intent to Sell and one count of Tax Stamp violations. . . .

"16. At about the same time Wayne F. McKinney retained Respondent, Wesley M. Norwood, to defend him on the two Douglas County felony charges.

"17. The Douglas County charges were set for trial on October 16, 1989, but were continued because plea negotiations were continuing between Respondent Wesley M. Norwood, and the District Attorney's office.

"18. On or about October 18, 1989, during the process of plea negotiating, Respondent, Wesley M. Norwood, knowing the financial status of Wayne McKinney obtained a personal cash loan from McKinney in the amount of $15,000.00. Wayne McKinney felt trapped, uncomfortable and that he had no choice except to loan the money to Respondent, Wesley M. Norwood. . . .

"19. Within days a plea agreement was reached and on November 29, 1989, Wayne McKinney plead guilty to reduced charges. . . .

"20. Respondent, Wesley M. Norwood, gave no collateral or security to Wayne McKinney for the $15,000.00 loan, nor did he discuss his $117,000.00 debt to Anna Faye Swaggerty or other relevant debts.

"21. Respondent, Wesley M. Norwood, did give Wayne McKinney 10% interest on the $15,000.00 [note] when he knew that just five months earlier he had paid 14% interest on a six month $23,000.00 loan from the Kaw Valley State Bank. The 10% interest rate was below the standard commercial loan rate in Douglas County, Kansas, in October 1989.

"22. Respondent, Wesley M. Norwood, agreed to repay the $15,000.00 note with interest on January 18, 1990. Respondent, Wesley M. Norwood failed to repay the note as promised even after many demands by Wayne F. McKinney. Three months after the filing of the original complaint in B4994 Respondent, Wesley M. Norwood, repaid the debt plus interest to Wayne McKinney on November 30, 1990.

"23. Respondent, Wesley M. Norwood's loan from Wayne F. McKinney was obtained under duress and was not on fair and reasonable terms.

"24. Respondent, Wesley M. Norwood, never suggested, required or allowed Wayne F. McKinney to seek legal advice from independent counsel concerning the loan described in paragraph [18].

"CONCLUSIONS OF LAW

"(1) That the acts of Respondent, Wesley M. Norwood amount to a vi-

olation of MRPC 1.7, 1.8(a), 1.15(d)(2)(iii) and (iv) and 8.4(a) and (g) and Respondent Wesley M. Norwood's oath of office."

At the conclusion of the hearing before the Kansas Board for Discipline of Attorneys, the Disciplinary Administrator recommended, and Wesley M. Norwood agreed, that there should be an informal admonition with a plan of oversight and supervision. The hearing panel agreed and found that Wesley M. Norwood should be informally admonished with the following plan of oversight and supervision:

"PLAN OF OVERSIGHT AND SUPERVISION—WESLEY M. NORWOOD
"1. Oversight and Supervision of Practice of Law:
Norwood's practice of law will be supervised by Bruce J. Woner for a 3 year period. The supervising attorney will review Norwood's case load and discuss his progress with members of the bar and the bench. The supervisor will make monthly reports to the disciplinary administrator regarding his fitness for the continued practice of law.

"2. Alcohol Rehabilitation:
A. Norwood shall abstain from all alcoholic beverages.

B. Norwood will be supervised by John Hampton of the Impaired Lawyers Committee or his designee. The supervisor shall meet with Norwood on a regular basis to ensure that Norwood is attending required meetings and is abstaining from the use of alcohol. The supervisor shall make monthly reports through the balance of 1992 and quarterly reports thereafter to the disciplinary administrator regarding Norwood's compliance with this section during the 3 year period.

C. Norwood shall continue to attend and participate in the following: 1) MCC Aftercare Counseling for so long as it is required by MCC; 2) Alcoholics Anonymous meetings at least three times a week for the 3 year period of oversight and supervision; and 3) the Valley Hope Aftercare program on a monthly basis through 1992 and potentially quarterly thereafter during the 3 year period.

"3. Restitution to Anna Faye Swaggerty:
A. Norwood will repay Anna Faye Swaggerty the full amount of the judgment plus interest.

B. A minimum of 12.5% of Norwood's net monthly income will go to pay Mrs. Swaggerty.

C. Any payments to Norwood from his children for monies loaned will be used to reduce Norwood's obligation to Mrs. Swaggerty.

D. Norwood will work toward making arrangements to sell certain real property owned. Proceeds from the sale of the property will be used to pay the expenses of sale and first mortgage. All other proceeds will be used to reduce the debt to Mrs. Swaggerty.

E. Norwood's financial condition will be supervised by Woner, Glenn, Reeder, Lowry & Girard of Topeka, Kansas. The supervisor will prepare monthly reports of Norwood's income; payments to Mrs. Swaggerty, and overall financial position to the disciplinary administrator.

"4. Financial Condition:
Norwood's financial condition will be reviewed on a quarterly basis by Woner, Glenn, Reeder, Lowry & Girard and Norwood's primary bankers, Georgeson and Hoover, and an updated financial statement and financial report will be forwarded at least on a quarterly basis to the disciplinary administrator.

"5. Norwood pledges himself to [fully] cooperate and work with the Supreme Court of Kansas, the office of the Disciplinary Administrator and all institutions or individuals identified above or their successors.

"6. At the end of the 3 year term, the office of the Disciplinary Administrator will make a report to the Supreme Court relative to this plan of oversight and supervision with a recommendation as to whether or not the plan should be continued or terminated."

Respondent has filed no exception to the hearing panel's final report and has accepted the findings of fact and conclusions of law of the hearing panel. He may not and does not challenge those findings and conclusions.

Respondent and his counsel urge this court to adopt the recommendations of the hearing panel. We understand the recommendations of the hearing panel to be a sincere attempt to provide a method for returning to Mrs. Swaggerty the funds loaned to respondent. We also understand the recommendations to be an attempt to provide respondent with a method of rehabilitating himself. Both attempts are laudable, but we are more inclined to examine carefully the nature of respondent's conduct, which amounts to serious violations of the Model Rules of Professional Conduct.

The admitted violations are compounded by the fact that respondent solicited the funds from his clients within the context of the attorney-client relationship at a time when critical services had yet to be accomplished for the clients by respondent. This point is perhaps no better illustrated than by quoting from Wayne McKinney's letter to the Disciplinary Administrator concerning the $15,000 loan he made to repondent:

"During the process of negotiating with the District Attorney, Mr. Norwood, aware of my financial situation, asked me rather firmly for a $15,000.00

personal loan . . . . Reluctantly, I gave it to him. During the course of our conversations, Mr. Norwood [repeatedly] asked me not to talk to anyone. Since I have never been in any legal trouble before, I was extremely nervous, stressed, and willing to do anything to get this part of my life over with. Being unfamiliar with the judicial process, I felt my situation would be compromised since he knew I had the money. I felt very trapped and uncomfortable, but felt I had no choice."

Our examination of respondent's conduct leads us to conclude that the appropriate sanction in this case is suspension from the practice of law. We have considered matters in mitigation, arguments of counsel, and the statement of respondent. The conduct reflected in the stipulated facts giving rise to the violations set forth in the conclusions warrant no less than suspension. Although we realize that respondent is not bound by the "plan of oversight" upon entry of this order, we urge him to follow through with this plan to the extent possible.

IT IS THEREFORE ORDERED that Wesley M. Norwood be and he is hereby indefinitely suspended from the practice of law in the State of Kansas.

IT IS FURTHER ORDERED that respondent shall comply with the provisions of Supreme Court Rule 218 (1992 Kan. Ct. R. Annot. 177), that the cost of these proceedings be assessed to respondent, and that this order be published in the official Kansas Reports.

SIX and ABBOTT, JJ., not participating.

WILLIAM J. DICK, district judge, assigned.